UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT LAUDERDALE DIVISION

JAMES CARPER,

    Plaintiff,

v.                                                                              CASE NO. 0:11-cv-60132-WPD

TWC SERVICES, INC.,                                          MAGISTRATE JUDGE SNOW
                                                                                     By Designation

    Defendant.
_____/

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S
STATEMENT OF UNDISPUTED FACT**

COMES NOW, the Plaintiff, JAMES CARPER, by and through his undersigned attorney and pursuant to Rule 56, Fed.R.Civ.P. submits the following objections to Defendant's Statement of Undisputed Facts:

4.    Plaintiff was not responsible for the duties listed by Defendant as Plaintiff's manager, Debbie Held, was a micromanager that refused to allow Plaintiff to do the job he was hired for. Plaintiff was not allowed to supervise or dispatch Technicians, prepare proposals, order parts, finalize technician performance appraisals, interview applicants for technician positions, or perform any other duty, including leaving the office without the direct approval and authorization of Debbie Held. (Ex. F. McDaniel Depo at page 37, line 14 to page 38, line 16); (Ex. G. Anderson Depo at page 14, line 19 to page 16, line 8); (Ex. H. Petit Depo at page 13, line 5 to page 16, line 12); (Ex. I. Carper Depo at page 40, line 18 to page 42, line 8; page 43, line 22 to page 46, line 12; page 48, line 16 to page 52, line 24; page 76, line 23 to page 77, line 14);(Ex. K. Held Depo at page 36, lines 4-25 ).

5.      Plaintiff's performance appraisal exceeded most expectations and he was given a $5,000 raise in May 2008, just before he discussed his heart problems with Debbie Held. (Ex. D. Performance Evaluation).There is no documentation showing Plaintiff was insubordinate or disciplined for any reason. (Ex. E. Morrison Depo at page 17, lines 7-17; page 80, lines 18-21; page 88, line 23 to page 89, line 5;  page 101, line 17 to page 102, line 3); (Ex. F. McDaniel Depo at page 64, line 16 to page 65, line 3; page 65, line 19 to page 66, line 15; page 67, lines 6-16).

6.      There is no documentation of any counseling, verbal or written. Held exaggerated at best by testifying that "There are a hundred emails of dissatisfaction."  (Ex. E. Morrison deposition at page 17, lines 8-10; page 88, line 23 to page 89, line 5;  page 101, line 17 to page 102, line 3); (Ex. F. McDaniel Depo page 64, line 16 to page 65, line 24; page 67, lines  6 to 16);  (Ex. I. Carper Depo at page 115, lines 1-14).

Defendant's supplementary response to Interrogatory # 3, pasted below, stated Plaintiff's termination was first considered October 13, 2008 and identified far less than a hundred emails as testified to by Held. Those emails are attached as Exhibit C. **There is no documentation to show any customer was dissatisfied with Plaintiff's customer service**. All of the emails are routine from June 2007 through November 2008, except the October 14, 2008 email requesting a plan of action. Nine of the emails were sent while Plaintiff was on medical leave beginning November 17, 2008, emails were sent while he was in surgery, while he was in ICU and recovering from heart surgery, until he was terminated the day he returned to work from medical leave on December 8, 2008.

In reviewing the emails Defendant's President, Regional Manager and the person that replaced Held, Anderson, all testified that sending emails to Plaintiff while he was on medical leave was inappropriate and that Plaintiff should not have been evaluated based on his performance while on medical leave. (Ex. E. Morrison Depo at page 16, lines 2-17; page 38, lines 10-17; page 41, line 20 to page 43, line 25; page 48, lines 16-24; page 50, line 23 to page 51, line 22; page 58, line 22 to page 59, line 9; page 74, line 3 to page 81, line 20; page 87, lines 7-23); (Ex. F. McDaniel Depo page 24, line 3 to page 25, line 13; page 34, lines 11-15; page 40, line 20 to page 43, line 23; page 45, line 6 to page 47, line 7; page 57, lines 1-5; page 58, line 2 to page 59, line 11; page 61, line 10 to page 62, line 9).

**INTERROGATORY NO. 3**

Please identify each and every reason for terminating Carper, stating: a) the dates termination was considered; b) any persons involved in the decision to terminate Carper; c) the reasons discussed for terminating Carper; d) the person or persons selected to replace Carper; e) identify any documents that were considered in the decision to terminate Carper; f) identify any documents that substantiate the reasons for Carper's termination.

**RESPONSE**:

1. Reason for separating Carper: Performance
    a) On or about October 13, 2008 through December 8, 2008
    b) Debbie Held, Becky Buch, Paul Morrisson, Wayne McDaniels
    c) Complaints from customers and Carper's failure to obey Held's directive to make efforts to retain Longobardi
    d) No person was selected to replace Carper
    e) Documents considered:
        i. E-mail from C. Couch to D. Held, dated Nov. 29, 2008
        ii. E-mails from C. Couch to F. Santiago, dated Nov. 18, 2008
        iii. E-mail from C. Couch to J. Carper, dated Nov. 17, 2008
        iv. E-mail from John Mitchell to D. Held, dated Oct. 22, 2008
        v. E-mails between D. Held and J. Carper, dated Aug. 15, 2008 – Aug. 21, 2008
        vi. E-mails from D. Held to J. Carper, dated Nov. 3, 5, 7, 10, 12, 19, 28, and 30, 2008; Oct. 11, 17, 22, 23, 24, and 27, 2008; Sept. 26, 2008; Aug. 7 and 15, 2008; July 3, 2008; June 11, 20 and 23, 2008; May 20, 2008; Apr. 3, 2008; Jan. 7, 11, and 23, 2008; Dec. 17, 2007; Nov. 6, 2007; Oct. 11, 22, and 24, 2007; Sept. 3, 2007; July 6 and 14, 2007; June 15, 2007.
        vii. E-mail from D. Held to P. Morrison, W. McDaniel and B. Buch, dated Oct. 14, 2008

      viii. E-mail from D. Held to B. Buch, dated Dec. 7, 2008
       ix. E-mail from D. Held to B. Buch, W. McDaniel, dated Dec. 6, 2008
        x. E-mail from D. Held to W. McDaniel, dated Dec. 4, 2008
       xi. E-mail from D. Held to W. McDaniel, dated Nov. 29, 2008
  f) Documents that substantiate reasons for Carper's termination:
       i. See response to "e" above.
      ii. E-mail from D. Held to B. Buch, W. McDaniels and P. Morrison, dated Dec. 8, 2008

7.    Defendant's supplement response to Interrogatory #3, pasted above, clearly states that it did not consider terminating Plaintiff's employment until October 13, 2008. Therefore of the emails identified, nine were sent prior to any consideration of termination and nine were sent while Plaintiff was on medical leave beginning November 18, 2008. The emails do not all show deficiencies but show tasks Held requested Plaintiff to accomplish. Four of those emails predate the above satisfactory performance appraisal Held gave Plaintiff in May 2008 and others are inquiries. Those emails show Held was a micromanager who knew every proposal and client issue and is evidence that Held could not have just discovered these problems while Plaintiff was on medical leave from November 18, 2008 until December 8, 2010. Plaintiff did not fail to respond to the emails, he testified that he responded in person, face to face. (Ex I  James Carper Depo at page 61, lines 11-23).

    The emails cited by Defendant do not accurately summarize the contents.

- The January 7, 2008 email does not "admonish Plaintiff" for failing to do something for a third month in a row. It states it is a third month in a row without an email to PF Changs at the Galleria regarding access issues. The only indication that Held had previously mentioned this to Plaintiff is that they had spoken about it previously. This occurred nine months before Defendant states it first considered termination.
- The January 11, 2008 email questioning Plaintiff about a problem with a part and requesting he contact Classic Residence at Hyatt. There is no other evidence

4

Plaintiff was ever asked about this before or after. This occurred nine months before Defendant states it first considered termination.

- The April 3, 2008 re: PF Chang's in Boca is an inquiry regarding a new problem with a part. Held praises Plaintiff stating "I know you are usually good with Customer Relations and follow up of complaints". This occurred six months before Defendant states it first considered termination.
- The April 20, 2008 email is not listed in response to Interrogatory 3and involves an emergency call to an account under warranty. Held states" We have a few to many situations like this." It does not state this happened too many times before, as summarized by Defendant. This occurred six months before Defendant states it first considered termination.
- The May 1, 2008 email is not listed in response to Interrogatory 3and only states a job was entered without a reference number. This occurred six months before Defendant states it first considered termination.
- The May 20, 2008 email praised Plaintiff stating: "I know you are typically good at returning calls, and do not know if Horst is correct or not, I do remember him calling you once before a few weeks ago while you were on vacation". This is not an admonishment for failure to return client calls. This occurred five months before Defendant states it first considered termination.
- The May 27, 2008 is not listed in response to Interrogatory 3 and merely questions whether a proposal needs to be prepared. There is no evidence of any deficiency.
- The August 15, 2008 emails are about the failure of technicians to provide surveys over a six week period. This was a new requirement for technicians and Held testified that Longobardi did much of the work at Starbucks. (Ex. K. Held Depo at page 52, lines  ). This occurred two months before Defendant states it first considered termination.
- The August 21, 2008 email regards technician Longobardi. Held repeatedly testified that Longobardi left because Held refused to support Longobardi. The evidence shows Longobardi left because he was upset he was denied promotion to Plaintiff's position and got his own contractor license and started a business in competition with Defendant. (Ex. K.  Held Depo at page 40, line 21 to page 41, line 2; page 44, line 18 to page 45, line 8; page 156, line 20 to page 157, line 19); (Ex. G. Anderson Depo at page 31, lines 5-17); (Ex. I. Carper Depo at page 57, line 13 to page 58, line 8). This occurred two months before Defendant states it first considered termination.
- The October 21, 2008 email is not listed in response to Interrogatory 3 and questions Plaintiff about a proposal worksheet that was submitted but is not in the system. It is an inquiry, not an admonishment.
- The October 22, 2008 email alerts Plaintiff to a problem at a Cracker Barrel and states that a proposal worksheet was submitted and re-printed. Defendant admits it is just an inquiry.

- The November 3, 2008 email states there are several proposals with errors, not "proposals full of errors" as summarized by Defendant. Plaintiff is told to check his work.
- The November 5, 2008 email does not admonish Plaintiff for a later response time, it is merely an inquiry regarding a technician's billing rate. It does not show any deficient performance by Plaintiff.
- The November 5, 2008 email at 5:02 is not an admonishment, it states they are "follow up notes from Meeting".
- The November 7, 2008 email is another inquiry regarding why one technician made a delivery rather than a different technician. It is evidence of Held being a micromanager and questioning an assignment of a technician made by Plaintiff as Service Manager.
- The November 12, 2008 email questions Plaintiff's judgment. It is not an admonishment.
- The November 18, 2008 email was sent to Plaintiff after he left the office on approved medical leave. Plaintiff is about to have major heart surgery in which his heart stopped for several minutes and Held is questioning him about whether a technician did a proper cleaning on an air conditioning coil a month a half earlier. **Held admits in the email that she knew Plaintiff already left for medical leave when she sent the email.** Defendant's President admitted this was inappropriate. (Ex. E. Morrison Depo at page 38, lines 10-17).
- The November 19, 2008 email was sent to Plaintiff while he was in the hospital. Held demands Plaintiff take responsibility and explain why Village Tavern did not have its filter changed and what Plaintiff would do to correct the preventative maintenance problem. Defendant admitted this was inappropriate. (Ex. E. Morrison Depo at page 41, line 20 to page 42, line 24); (Ex. F. McDaniel Depo at page 24, lines 3-19; page 40, lines 20-24; page 42, line 24 to page 43, line 23)
- The November 28, 2008 email was sent to Plaintiff while on medical leave recovering from heart surgery. Held was able to order the parts in five minutes. Defendant admitted this was inappropriate. (Ex. E. Morrison Depo at page 63, lines 3-9); (Ex. F. McDaniel Depo at page 42, line 24 to page 43, line 23).
- The November 30, 2008 email was sent to Plaintiff while he was in Intensive Care recovering from heart surgery. (Ex. B). Held questions why forms to replace AC units are no longer used. There is no evidence said forms were used while Plaintiff was employed. Defendant admitted this was inappropriate. (Ex. E. Morrison Depo at page 64, line 10 to page 65, line 18).

8.      Plaintiff denies that his performance grew worse and attributes problems to his disability which prevented him from climbing ladders to client rooftops and walking without shortness of breath. (Ex. I. Carper Depo at page 86, line 25 to page 93, line 25).

Held was frustrated because Plaintiff did not return her communications while he was hospitalized, in surgery, in intensive care and recuperating from major heart surgery. (Ex. E. Morrison deposition at page 75, line 18 to page 78, line 1; page 80, line 18 to page 81, line 20); (Ex. F. McDaniels Depo page 58, lines 2-16; page 61, line 14 to page 62, line 9); (Ex. H. Petit Depo at page 24, lines 9-13); (Ex. K. Held Depo at page 104, line 20 to page 105, line 9; page 115, line 7 to page 116, line 12; page 118, line 3 to page 119, line 21; page 162, lines 1-2).

9. Plaintiff denies delaying or ignoring Held's requests as he responded to her by speaking with her face to face. (Ex. I. Carper Depo at page 61, lines 11-23). Debbie Held testified that Longobardi left because she supported Plaintiff over Longobardi and it is disingenuous to blame Plaintiff for something that Held has admitted was her fault. (Ex. K. Held Depo at page 40, line 21 to page 41, line 2; page 44, line 18 to page 45, line 8; page 156, line 20 to page 157, line 19); (Ex. G. Anderson Depo at page 31, lines 5-17); (Ex. I. Carper Depo at page 57, line 13 to page 58, line 8).

10. Plaintiff was given a list of items to address after Held was aware that he would be going on medical leave to have major heart surgery. (Ex. I. Carper Depo at page 90, lines 12 to page 92, line 19; page 106, lines 5-13). Most of the items on the list relate to the failure to retain Longobardi which Held admitted was her fault. (Ex. K. Held Depo at page 40, line 21 to page 41, line 2; page 44, line 18 to page 45, line 8; page 156, line 20 to page 157, line 19); Longobardi had applied for Plaintiff's position six months before Plaintiff was hired. .(Ex. G. Anderson Depo at page 31, lines 5-17); There is no evidence

that Held ever requested Plaintiff to respond to the plan of action after she provided it to him.

11.     Plaintiff did not have an opportunity to correct his performance as he was terminated the day he returned from medical leave. (Ex. I. Carper Depo at page 104, lines 18-24 ); (Ex. K. Held Depo at page 178, lines 15-18). Plaintiff told Held about his heart problem and need for surgery in May 2008. (Ex. I. Carper Depo at page 90, lines 12 to page 92, line 19; page 106, lines 5-13).

12.     Plaintiff told Held about his surgery when it was scheduled but had told Held about his heart condition in May 2008. (Ex. I. Carper Depo at page 90, lines 12 to page 92, line 19; page 106, lines 5-13). Held does not recall when Carper first told her about his heart condition. (Ex. K. Held Depo at page 38, lines 3-9; page 56, lines 4-25; page 65, lines 10-24;page 78, line 6 to page 79, line 25;

13.     Plaintiff left the office on November 18, 2008, returned December 8, 2008 and was fired the morning he returned to work. (Ex. C, emails of November 18, 2008 and December 8, 2008).

14.     Held was aware of Plaintiff's performance before his medical leave as evidenced by the emails she sent to him. Held was a micromanager who was aware of everything that went on in the branch and whether she became aware of anything new while Plaintiff was on medical leave is disputed. (Ex. F. McDaniel Depo at page 38, lines 3-16); (Ex. G. Anderson Depo at page 14, line 16 to page 16, line 8); (Ex. H. Petit Depo at pages 13-16).

16. On December 8, 2008 Plaintiff was terminated without cause and was paid to the end of the month based on his employment contract. (See Defendant's Motion to Strike Jury Demand, Ex. A).

17. Plaintiff denies stating that Held could not fire him or that he could sit around and do nothing or that he could not be touched because of his medical leave. This is an outright falsification as Held did not document any such statements in her report of what occurred on December 8, 2008. (Ex. C, email of December 8, 2008).

18. Held was very angry and upset that Plaintiff did not return her communications while in the hospital and on medical leave and that was a substantial motivating factor in her decision to terminate Plaintiff. (Ex. C. Held emails of November 29, 2008, December 6, 2008, December 8, 2008);(Ex. E. Morrison Depo at page 75, line 18 to page 78, line 1; page 80, line 18 to page 81, line 20); (Ex. F. McDaniels Depo page 61, line 14 to page 62, line 9); (Ex. H. Petit Depo at pages 24, lines 9-13); (Ex. I. Carper Depo at page 114, line 12 to page 115, line 14 ); (Ex. K. Held Depo at page 104, line 20 to page 105, line 9; page 115, line 7 to page 116, line 12; page 118, line 3 to page 119, line 21; page 162, lines 1-2).

20. Plaintiff denies Held believed she should have fired him sooner and there is no documentation to substantiate this manufactured testimony. Defendant's President, Vice President, Regional Manager and Office Manager all agree that Held is a liar and a thief. She was terminated for stealing from the company, using technicians to work on her home and her mother's home while billing it to customer accounts. Held reluctantly admitted to this during her deposition after first testifying she did not know why she was

fired. (Ex. E. Morrison deposition at page 75, line 18 to page 78, line 1; page 80, line 18 to page 81, line 20); (Ex. F. McDaniel Depo page 61, line 14 to page 62, line 9); (Ex. G. Anderson Depo at page 25, line 6 to page 26, line 6);(Ex. H. Petit Depo at page 24, lines 9-13); (Ex. K. Held depo at page 10, line 21 to page 12, line 7; page 32, lines 7-10).

21.     The EEOC charge was dismissed without a finding and statements by EEOC employees were made because Plaintiff did not respond to EEOC inquiries and had no attorney. (See Investigative Memorandum and Dismissal and Notice of Rights at Ex. 17 to Plaintiff's Undisputed Statement of Fact).

22.     The EEOC Investigator statements are not admissible and were based on the EEOC's non-receipt of any response from the Plaintiff after Defendant provided a reason for its actions. (See Investigative Memorandum and Dismissal and Notice of Rights at Ex. 17 to Plaintiff's Undisputed Statement of Fact).

23.     According to the testimony of Defendant's President, Paul Morrison, Regional Manager Wayne McDaniel and current branch manager James Anderson, Debbie Held is a liar and a thief. (Ex. E. Morrison deposition at page 75, line 18 to page 78, line 1; page 80, line 18 to page 81, line 20); (Ex. F. McDaniels Depo page 61, line 14 to page 62, line 9); (Ex. G. Anderson Depo at page 25, line 6 to page 26, line 6); (Ex. H.Petit Depo at page 24, lines 9-13); (Ex. K. Held depo at page 10, line 21 to page 12, line 7; page 32, lines 7-10). Held denied knowing why she was fired before admitting it was theft. (Ex. K. Held depo at page 10, line 21 to page 12). Held denied telling Carper and others that she told them that she would be doing work in the hospital and expected everyone to work in the hospital, while Carper and Office Manager Bonnie Petit testified Held made that

statement. (Ex. K. Held depo at page 23, lines 6-23; page 166, lines 2-10); (Ex. H. Petit Depo at page 17, lines 93); (Ex. I. Carper Depo at page 83, line 22 to page 84, line 14; page 93, lines 7-19). Held testified repeatedly that Carper requested she send him proposals while recuperating after surgery, but Petit testified that Held asked Carper to review proposals while he was on medical leave.

24. Regional Manager Wayne McDaniel testified that Plaintiff told him about his heart condition and that he was going into the hospital for a procedure related to his heart condition in the summer of 2008. McDaniel testified that it would be inappropriate to send work to an employee who was having and recovering from heart surgery. McDaniel actually testified that if Held evaluated Plaintiff based on his performance while in the hospital that it would be discrimination and that it sounded like Held was angry because Plaintiff did not respond to her communications while he was in the hospital and recovering from heart surgery on medical leave. McDaniel believed Plaintiff had a serious heart condition. (Ex. F. McDaniel Depo at page 17, lines 4-14; page 24, lines 3-19; page 40, lines 20-24; page 45, lines 6-23; page 46, lines 3-11; page 58, line 2 to page 59, line 11, page 61, line 22 to page 62, line 9; page 63, line 23 to page 64, line 5).

Company President Paul Morrison testified that the ADA protects the disabled from discrimination, that is illegal to terminate an employee because of his disability, because of a medical record of disability or if the company perceives the employee as being disabled. Morrison testified that a person recovering from heart surgery should not be required to perform duties and that it would be unfair to evaluate an employee's performance while on medical leave after heart surgery. Morrison further testified that it

was inappropriate for Held to send Plaintiff emails while he was having surgery or in the intensive care unit. Morrison also testified that Plaintiff should not have been terminated based on his failure to respond to Held's communications while he was on medical leave.

In complete contradiction to Defendant's Undisputed Statement of Fact, Morrison testified that he was aware Plaintiff was hospitalized in November 2008 for heart surgery, that Plaintiff had a history of heart problems, was in persistent atrial fibrillation and had procedure for cardiac arrhythmia and was in the intensive care unit following surgery. Finally, and most relevant to the frivolous summary judgment motion filed by Defendant, Morrison testified that there were genuine issues of material fact as to whether Plaintiff was disabled, had a medical record of disability and whether Plaintiff's disability was a substantial motivating factor in the decision to terminate are genuine issues of material fact. (Ex. E. Morrison Depo at page 12, line 16 to page 14, line 9; page 16, lines 17; page 38, lines 3-17 ; page 41, line 20 to page 51, line 22; page 59, lines 3-9; page 84, line 1 to page 87, line 19; page 103, line 7 to page 105, line  8).

25.     Defendant admits Plaintiff was not able to perform all of the essential functions of the job. This is direct evidence and an admission that Plaintiff is disabled. Because of his heart condition he suffered shortness of breath, could not climb ladders or spend long periods of time in the heat. However, Plaintiff was previously accommodated by Held (Ex. I.  Carper Depo at page 87, line 1 to page 92, line 19). (See Defendant's undisputed statement of fact # 27 which is an admission that Plaintiff's disability was accommodated by Defendant); (Ex. A. Affidavit of Dr. Musial); (Ex. K. Held Depo at page 39, lines 3-12; page 65, line 5 to page 68, line 11 ); (Ex. J. McCord Depo at page 15, line 3 to page

18, line 20; page 33 line 5 to page 35, line 1;page 42, line 8 to page 44, line 8; page 46, line 13 to page 49, line 23).

29.     Plaintiff is able to care for himself because he has a pacemaker that constantly keeps his heart beating. If the pacemaker were to malfunction, Plaintiff's heart would stop. (Ex. A.  Affidavit of Dr. Musial); (Ex. I Carper Depo at page  88, line 2 to page 90, line  25); (Ex. J. McCord Depo at page 15, line 3 to page 18, line 20; page 33 line 5 to page 35, line 1;page 42, line 8 to page 44, line 8; page 46, line 13 to page 49, line 23).

30.     Plaintiff cannot perform all the activities of daily living and would be dead without a pacemaker. He is substantially restricted from walking due to shortness of breath. He has not climbed a ladder since his surgery, cannot operate mechanical devices that use electromagnetic fields and cannot stand in front of a store that has shoplifting detectors.  (Ex. A. Affidavit of Dr. Musial); (Ex. I Carper Depo at page  88, line 2 to page 90, line 25); (Ex. J. McCord Depo at page 15, line 3 to page 18, line 20; page 33 line 5 to page 35, line 1;page 42, line 8 to page 44, line 8; page 46, line 13 to page 49, line 23).

          Respectfully submitted

          __*s/R.Fleischer*__
          Randy A. Fleischer, Esq.
          Florida Bar # 910546
          randy@rafesq.com
          8258 State Road 84
          Davie FL 33324
          (954) 472-8401
          Fax (954) 472-8446
          Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on, August 15, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing, generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                 *s/R.Fleischer*
                                 Randy A. Fleischer, Esq.
                                 Florida Bar Number 910546
                                 randy@rafesq.com
                                 Law Offices of Randy A. Fleischer, P.A.
                                 8258 State Rd 84
                                 Davie FL 33324
                                 954) 472-8401
                                 954) 472-8446 (fax)
                                 Attorney for Plaintiff

### SERVICE LIST

**CARP V TWC, INC..**
**Case No. 0:11-cv-60132-WPD**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Christine D. Hanley & Associates, PA
Christin M. Russell, Esq.
Fla. Bar #51485
crussell@cdhanley.com
1000 Southern Blvd. Second Floor
West Palm Beach FL 33405
561) 659-5646
561) 659-1260 (Fax)
Attorneys For Defendant
Service via email