UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT LAUDERDALE DIVISION

JAMES CARPER,

      Plaintiff,

v.                                     CASE NO. 0:11-cv-60132-WPD

TWC SERVICES, INC.,             MAGISTRATE JUDGE SNOW
                                         By Designation

      Defendant.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITON TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, **JAMES CARPER** , by and through the undersigned attorney, and files this Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment. Defendant argues that Plaintiff was not disabled and not denied a reasonable accommodation when he was fired the day he returned to work from major heart surgery. Plaintiff has a medical record of atrial fibrillation and had previously been accommodated by Defendant as he did not have to perform duties requiring him to walk in the heat or climb ladders as he experienced shortness of breath while walking short distances and experienced dizziness and blackouts before his termination.

Defendant's motion ignores direct evidence Plaintiff was fired because he did not return his manager's communications while on medical leave for heart surgery. Defendant's President and managers testified truthfully it was inappropriate for former Branch Manager Debbie Held to terminate Plaintiff because he did not respond to emails she sent to him while he was in surgery, in the intensive care unit and on medical leave recuperating from major heart surgery. Defendant's motion relies on Held's testimony, who was terminated for stealing from the company and lying about it. Much of Held's testimony is unfounded and contradicted. This Court will have to decide whether to sanction Defendant's counsel as the Defendant's officers admitted Held is a liar and a thief and her conduct toward Plaintiff was inappropriate, discriminatory and that there are

genuine issues of material fact that must prevent this Court from granting summary judgment.

**STATEMENT OF FACTS**

CARPER was hired by TWC on or about April 23, 2007 as Service Manager after a thorough job search, background check and intensive interview process. CARPER was recommended by employment staffing firm Aerotek for the position. CARPER scored very high on the Wonderlic pre-employment test and an OAD test showing he was highly qualified for the position. CARPER had extensive experience and training. (Ex. G. Anderson Depo at page 21, line 6 to page 24, line 21).

On May 1, 2008 CARPER was given a performance appraisal (Ex. D)  showing he met or Exceeded Requirements in all 28 individual assessment areas. Carper's lowest score on the evaluation was a "Meets Requirements – Minus" in communications. The performance evaluation showed CARPER met or was making progress towards all of his goals and was given a salary increase in the amount of $5,000 or 7.69%.   CARPER was never disciplined nor given any formal warnings regarding his performance. (Ex. E. Morrison Depo at page 17, lines 7-17; page 80, lines 18-21; page 88, line 23 to page 89, line 5;  page 101, line 17 to page 102, line 3); (Ex. F. McDaniel Depo at page 64, line 16 to page 65, line 3; page 65, line 19 to page 66, line 15; page 67, lines 6-16). Held routinely sent CARPER emails regarding problems that needed to be addressed but there is no indication that CARPER failed to address those problems. (See Opposition to Disputed Facts # 6 and 7).

In mid May 2008 Plaintiff informed TWC that he had a heart condition after he suffered a blackout in the warehouse. (Ex. I. Carper Depo at page 90, line 14, to page 91, line 21). After mid-May 2008 Carper received increased criticism regarding his performance and was blamed for the poor performance of service technicians. (Ex. C). On or about November 18, 2008 CARPER was on approved medical leave for planned heart surgery. (See Defendant's Statement of Undisputed Facts #13 and Ex. C email of 11/18/08). While CARPER was on the operating table his heart stopped and he was clinically dead for several minutes. (Ex. I. Carper Depo at page 88, lines 2- 18).

During the period that CARPER was on medical leave, including the day he was having heart surgery his supervisor, Debbie Held, was sending him email, voice and/or text messages regarding work issues, expecting him to respond while on medical leave. (See Opposition to Disputed Facts # 6 and 7); (Ex. C). CARPER had a pacemaker installed in his heart that was necessary to keep his heart functioning and remains necessary to keep his heart beating.  (Ex. A. Affidavit of Dr. Musial); (Ex. I Carper Depo at page  88, line 2 to page 90, line  25); (Ex. J. McCord Depo at page 15, line 3 to page 18, line 20; page 33 line 5 to page 35, line 1;page 42, line 8 to page 44, line 8; page 46, line 13 to page 49, line 23).

Due to complications with the surgery CARPER was in intensive care for five days. (Ex. B. Medical Records). Held continued to send CARPER voicemail, text and/or email messages while he was in intensive care. (See Opposition to Disputed Facts # 6 and 7); (Ex. C). Held stopped by the hospital and was aware CARPER was in intensive care. (Ex. J. McCord Depo at page 45, lines 6-25). Although Held was aware of CARPER's condition, she continued to send him voice, email and/or text messages demanding he respond regarding work issues as evidenced by email messages from November 18, 2008 to December 6, 2008. (Ex. C).

CARPER was released from the hospital on November 25, 2008. (Ex. B). While CARPER was recuperating at home Held continued to demand that he respond to her voice, email and/or text messages regarding his duties even though she was aware he was on medical leave. Held sent CARPER 30-40 proposals to work on while he was recuperating from major heart surgery. (Ex. C). Held testified CARPER requested the proposals, but Bonnie Petit testified CARPER did not request them. (Ex. K. Held depo at page 74, lines 13-20; page 89, lines 18-23; page 98, line 5 to page 99, line 22; page 102, line 25 to page 103, line 22); (Ex. H.Petit Depo at page 20, line 22 to page 22, line 6; page 29, lines 5-12).

TWC's President, Paul Morrison and Regional Manager Wayne McDaniel testified that Held's contacts and demands were inappropriate. (Ex. E. Morrison Depo at page 16, lines 2-17; page 38, lines 10-17;  page 41, line  20 to page 43, line 25; page 48,

3

lines 16-24; page 50, line 23 to page 51, line 22; page 58,line 22  to page 59, line 9; page 74, line 3 to page  81, line 20; page 87, lines 7-23); (Ex. F. McDaniel Depo page 24, line 3 to page 25, line 13; page 34, lines 11-15; page 40, line 20 to page 43,line 23; page 45, line 6 to page 47, line 7; page 57, lines 1-5; page 58, line 2 to page 59, line 11; page 61, line 10 to page 62, line 9). Held sent emails to TWC officials stating that she was going to terminate CARPER after he returned to work, citing his failure to return her calls, emails and/or text messages while he was on medical leave as a reason for termination. (Ex. C. emails of November 29, 2008, December 6, 8, 2008).

CARPER was released to return to work on December 8, 2008. (See Defendant Statement of Undisputed Facts #15, Ex. 2).Carper arrived very early in the morning and was terminated by Held before noon. (Ex. I. Carper Depo at page 104, lines  18-19);(Ex. C. Held email December 8, 2008). All witnesses agree that Held was a micromanager and knew everything that was going on at the branch as she kept a close watch on all her subordinates and client files. (Ex. F. McDaniel Depo at page 37, line 14 to page 38, line 16); (Ex.G. Anderson Depo at page 14, line 19 to page 16, line 8); (Ex. H. Bonnie Petit Depo at page 13, line 5 to page 16, line 12); (Ex.  I. Carper Depo at page 40, line 18 to page 42, line 8; page 43, line 22 to page 46, line 12; page 48, line 16  to page  52, line 24; page 76, line 23 to page 77, line 14); (Ex. K. Held Depo at page 36, lines 4-25 ).

Held was later terminated for misappropriating TWC resources as she admittedly took Home Depot Gift Cards that were meant as bonuses to employees and also used company technicians to do work on her home and her mother's home while billing the time to TWC clients. TWC's President testified that Held was a liar and a thief, yet TWC's attorneys rely heavily on Held's testimony in its motion. (See Plaintiff's Opposition to Defendant's Undisputed Statement of Fact, #23).

Defendant's counsel has filed a Statement of Undisputed Facts that are contradicted by the record evidence and its motion ignores the testimony of Defendant's President who admitted to genuine issues of material fact regarding Plaintiff's disability and that Held terminated him because of his performance while on approved medical leave.

4

### *STANDARD OF REVIEW*

The court in reviewing a motion for summary judgment is guided by the standards set forth in Rule 56(c) of the Federal Rules of Civil Procedure which provides as follows:

> .... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

The moving party bears the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 90 S.Ct. 1598, 1608 (1970). Further, in addressing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the nonmoving party, *Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368 (11th Cir.1982), *citing. Adickes v. S.H. Kress & Co.,* 398 U.S. at 157, 90 S.Ct. at 1608; *Augusta Iron & Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988).

If the record presents issues of material fact the court must deny the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 157, 90 S.Ct. at 1608. The non-moving party, however, cannot rest upon mere allegations, but must rebut any facts properly presented by the moving party through affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *Id.* at 398 U.S. 155, 90 S.Ct. at 1607. Moreover, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53(1986).

In ruling on a Motion for Summary Judgment in a discrimination case, the Court should review the record as a whole. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 130 (2000).  The Court should give credence to the evidence favoring the non-movement, as well as the evidence supporting the moving party that is uncontradicted and un-impeached, and only to the extent that the moving party's evidence comes from disinterested witnesses, *Id.*  It should further be noted that, regardless of whether the case

involves circumstantial or direct evidence, the employee need merely prove that the protected characteristic was "a motivating factor," even if there were several other factors that motivated the same decision. *Desert Palace, Inc. v. Costa,* 156 L.Ed. 2d 84, 123 S. Ct. 2148 (2003).

<u>Carper's Heart Surgery Is Evidence Of Disability</u>

Defendant's counsel argues that CARPER's heart condition does not qualify as a disabling condition. It is uncontroverted that CARPER had major heart surgery and that he complained about and continues to experience shortness of breath and fatigue when walking distances that most people can walk without experiencing shortness of breath and fatigue. CARPER testified that he cannot climb ladders, walk long distances, work with air conditioning equipment and that his pace maker could stop if he walks into a store that has electronic detectors to stop shoplifters as those devices could cause a malfunction of his pacemaker which would stop his heart. Defendant admits (SOF# 27) and Held and Carper testified that Carper's heart problems were accommodated as Held modified Carper's job duties so that he did not have to walk long distances, could stay out of the heat and did not have to climb ladders. (See Plaintiff's Opposition to Defendant's Undisputed Statement of Fact, #25).

The commentary to the federal regulations contains a non-exclusive list of conditions that constitute a physical impairment. For the purposes of CARPER's disability claim, it is significant that heart disease has been included in this listing for 14 years. 45 C.F.R. pt. 84, App. A., subpart (A)(3) (1997). Courts, including the Eleventh Circuit Court of Appeals, frequently look to EEOC regulations to assess the next analytical step of determining whether a physical impairment substantially limits a major life activity. See, e.g., G*ordon v. E.L. Hamm & Assocs., Inc.* 100 F.3d 907, 911 (11th Cir. 1996).

There is no question that CARPER is disabled based on the extensive medical records produced to TWC's attorneys. (Ex. B). CARPER has a medical record that includes hypertension, dyslipidemia, heart palpitations, atrial flutter, atrial fibrillation, ablation, heart surgery and then had a pacemaker surgically implanted in 2009.

6

CARPER's medical record evidences CARPER suffers from shortness of breath and is substantially restricted from walking as he can only walk a short distance without suffering shortness of breath and dizziness. Clearly CARPER has a medical record that shows he is substantially restricted from walking and breathing as a result of a major and permanent impairment to his heart and circulatory system. (See *Baker v Windsor Republic Doors,* (6th Cir. March 8, 2011) finding heart disease with symptoms of fatigue and shortness of breath an impairment protected under the ADA based on EEOC regulations at 29 C.F.R. § 1630.2(h) (1996)).

*D'Angelo v. ConAgra Foods, Inc.,* 422 F.3d 1220 (11th Cir. 2005) reversed granting an employer's summary judgment motion in an ADA case in which D'Angelo suffered vertigo which caused dizziness. The Appellate Court found genuine issues of material fact as to whether the employer perceived her as being disabled, reversed and remanded the case for trial. It further stated at page 1237:

> We agree with . . . the Supreme Court's subsequent decision in *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), "the conclusion seems inescapable that `regarded as' employees under the ADA are entitled to reasonable accommodation in the same way as are those who are actually disabled." *Williams,* 380 F.3d at 775 In *Bragdon,* the Court explained:

> The ADA's definition of disability is drawn almost verbatim from the definition of "handicapped individual" included in the Rehabilitation Act of 1973. . . . Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations. In this case, Congress did more than suggest this construction; it adopted a specific statutory provision in the ADA directing as follows: "Except as otherwise provided in this chapter, nothing in this chapter shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. § 790 *et seq.*) or the regulations issued by Federal agencies pursuant to such title." 42 U.S.C. § 12201(a). The directive requires us to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act.*Id.* at 631-32, 118 S.Ct. 2196 (citations omitted).

Therefore cases interpreting the Rehabilitation Act are instructive in ADA and FCRA disability discrimination cases. (See *Bey v. Bolger,* 540 F. Supp. 910, 927

(E.D. Pa. 1982) concluding that plaintiff's cardiovascular disease proved a record of impairment and that he was regarded as disabled based on uncontrolled blood pressure, cardiac enlargement and abnormal electrocardiogram.).

This Court should follow the decision in *Lawson v. Plantation General Hospital, LP,* 704 F. Supp. 1254 (S.D. Fla. 2010) in which Magistrate Judge Rosenbaum denied Defendant's Motion for Summary Judgment regarding a disability discrimination claim in which plaintiff's sickle cell anemia was found to be a permanent condition that caused weakness, weight loss and shortness of breath. (*Id* at page 1278). Finding that whether plaintiff's condition was substantially limiting her major life activities was a question of fact for the jury, the Court ruled that summary judgment was inappropriate, citing *Harris v H&W Contracting Co.* 102 F.3d 516 (11th Cir. 1996).

District courts within the Eleventh Circuit have recognized *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) and similarly have treated the determination of a disability as a question of fact for the jury. *See Mize v. Centura Financial Services,* 2009 WL 3419586 (S.D.Ala. Oct. 21, 2009); *Irizarry v. Mid Florida Community Services, Inc.,* 2009 WL 2135113 (M.D.Fla. July 14, 2009); *Quitto v. Bay Colony Golf Club, Inc.,* 2007 WL 2002537 (M.D.Fla. July 5, 2007); *Smith v. Quintiles Transnational Corp.,* 509 F.Supp.2d 1193 (M.D.Fla.2007); *Richards v. Publix Supermarket, Inc.,* 2007 WL 570090 (M.D.Fla. Feb. 20, 2007). As Held admitted knowing about CARPER's heart impairment and previously had accommodated his restrictions, there is evidence to show she perceived CARPER as disabled.

<u>Held E-mails are Direct Evidence of Causal Link</u>

Defendant's counsel argues there is no evidence that CARPER's disability was the reason for termination. Defendant argues there are a hundred emails showing dissatisfaction with his performance, based on Held's testimony, which is contradicted and easily impeached. Defendant further argues that CARPER was insubordinate the day he returned to work, based exclusively on Held's testimony that CARPER said he can't be touched because he was on medical leave. CARPER denies saying anything of the sort. Further, TWC has never previously identified such statements as a reason for

termination. (See Supplemental Response to Interrogatory #3 in Opposition to Statement of Undisputed Fact). Regardless, it is alleged those statements were made on December 8, 2008, after Held had emailed TWC President and the Human Resources director that she had already decided to terminate CARPER. Nor is there any mention of such statements in Held's email of December 8, 2008 in which she detailed her conversation with CARPER. (Ex. C. e-mail of December 8, 2008). It is unquestionable that the reasons argued by TWC in its Summary Judgment are manufactured and pretextual.

Held's email of November 29, 2008 conveys the decision she made to fire CARPER. Held states that it has become evident to her "especially over the last few weeks" and that "more issues have happened in the last few days that only make my decision even clearer". This is direct evidence of discrimination as it is the statement of the decision-maker regarding the termination decision. Clearly those last few weeks CARPER was on medical leave and that over the last few days CARPER did not respond to Held's request for him to work while on medical leave.

Held's email of December 8, 2008 at 11:41 am reviews the termination meeting Held had with CARPER. Held states:

> "Though Jim was not fully released back to work until 12/08/08, he made no attempt to return any of my phone calls and/or emails. . . . Jim did however return select phone calls to various employees and Customers and answered various emails to friends, family and a few select Customers. . . . On Friday, 12/5/08 at approx. 11:45 am I left a voice message on Jim's Company cell phone asking him to call, I explained that it was important that I needed to ask him a question regarding a exhaust fan we received for PF Changs The Falls and that the Facility Director wanted it installed 'yesterday' and I did not have any information on this. I explained I need to know if the job required a crane, etc etc. I also followed up with a text message at 12:02pm. Jim never returned my call. I left him two other messages during his absence as well with follow up emails resulting in no call backs or email responses. . . .
>
> I then addressed that he did in fact read select emails over the last 2 weeks, mostly from friends, family co-workers wishing him well and a few from select Customers and that he did answer his phone and made return phone calls to select people, but yet he didn't have the courtesy or respect to return my calls or emails even when I expressed it was important."

It is clear that a substantial motivating factor in the decision to terminate CARPER, made while on medical leave, was CARPER's failure to respond to Held while recuperating from heart surgery. Even Defendant's President and Managers agree this was inappropriate and possibly discriminatory. (See Plaintiff's Opposition to Defendant's Undisputed Statement of Fact, #24).

The argument that Held had discovered customer problems that were not previously addressed by CARPER ignores the testimony that Held was a micromanager who reviewed customer files daily, refused to allow CARPER to do anything without her authorization and that Held could not have discovered anything she did not know while CARPER was on medical leave. (See Plaintiff's Opposition to Defendant's Undisputed Statement of Fact, #4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 17, 18, 20, 23, 24 and Ex.'s C and D). It is clear from reading Held's emails of November 29 and December 8 and the testimony of all the witnesses that she was angry that CARPER did not return her messages and that she based her decision to terminate him on his failure to respond to her while he was on medical leave. (See Plaintiff's Opposition to Defendant's Undisputed Statement of Fact, #18). TWC's President and Regional Manager agree that it would not be appropriate to terminate CARPER based on his performance while on medical leave and that doing so would be disability discrimination. The motion for summary judgment is wholly without merit and is sanctionable.

<u>Direct Evidence</u>

The emails from Debbie Held on November 29, 2008, December 3, 2008 and December 8, 2008 are direct evidence that she decided to fire Plaintiff because he did not return her communications or perform his duties while on medical leave. The most comprehensive and scholarly opinion written by the Eleventh Circuit on the subject of direct evidence can be found at *Wright v. Southland Corporation*, 187 F.3d 1287 (11th Cir. 1999). The Court explained that discrimination law puts plaintiffs in the difficult position of having to prove the state of mind of the decision-maker, and that to make matters easier for plaintiffs, the Supreme Court, in *McDonnell Douglas v. Green*, developed another method of proof that supplemented but did not replace traditional

10

evidentiary standards.  *Wright*, *Supra* at 1289-1290.  Plaintiffs in discrimination suits always have the burden of demonstrating that, more probably than not, the employer took an adverse action against them on the basis of a protected characteristic.  *Id.* at 1292.  "To assist him in this endeavor, the Plaintiff may, if he chooses, attempt to establish the *McDonnell Douglas* presumption and thereby force the Defendant to articulate a lawful reason . . . alternatively, the Plaintiff may forego *McDonnell Douglas* and simply attempt to prove illegal discrimination under the ordinary standards of proof."  *Id*. at 1292-1293. (Internal quotations omitted).

The Court concluded that direct evidence "in the context of employment discrimination law, means evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic."  *Id*. at 1293.  The Eleventh Circuit explained that it is important to properly define "direct evidence" due to repeated statements that if a Plaintiff has direct evidence of discrimination then he is not required to rely upon the *McDonnell Douglas* method of proof.  *Id*. at 1293.  *McDonnell Douglas* is merely an evidence producing method that can aide a Plaintiff in his task of proving illegal discrimination by a preponderance of the evidence.  *Id.*  Therefore, if "direct evidence" is the alternative to using *McDonnell Douglas*, this term necessarily includes any other evidence sufficient to prove (without the benefit of the *McDonnell Douglas* method) that the decision was more probably than not based on discrimination.  *Id.*

The Court explained in *Wright* that the problem is that "direct evidence" has a well-established meaning in the law of evidence as "evidence, which if believed, proves existence of a fact in issue without inference or presumption," which is at odds with the definition of this term as used in the context of employment discrimination law.  *Id.*  The *Wright* Court then explained that there are two possible definitions of direct evidence in the law of employment discrimination: 1 – "The preponderance definition": Evidence from which one can find, by a preponderance of the evidence, a causal link between the adverse action and the protected characteristic; and 2 – "The dictionary definition": Evidence that, if believed, proves the existence of a fact without inference or

presumption.  *Id.* at 1294.  The *Wright* Court explained that the Eleventh Circuit has several cases regarding "direct evidence," some of which "to the dictionary definition, and other cases defining it as evidence that "relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  *Id.* at 294.  The *Wright* Court then continues to analyze several Eleventh Circuit cases in both categories.  *Id.* at 1295-1300.  The Court explains that the "preponderance definition" of "direct evidence" is the law of the Eleventh Circuit, and that this is the only way that the different cases can be reconciled with each other.  *Id.*  The Court mentioned for example a case in which the decision-maker had told Plaintiff that she was not promoted because her male competitor who received the position had a wife and children and therefore needed the money more than Plaintiff.  *Id.* at 1295. This evidence indeed would require inferences regarding the decision-makers view that a male's need for income was based on a sexual stereotype, and an inference that this sexual stereotype was the cause of the failure to promote.  *Id.* Nonetheless, this type of evidence is considered "direct evidence" under the "preponderance definition" in the Eleventh Circuit.  The *Wright* Court mentioned another case in which the employer said that it "needed a black director."  *Id.* at 1295-1296.  This evidence would require inferences that the employer's felt need for a black director was actually the reason for Plaintiff's termination, and that the termination was not done solely for unrelated reasons.  *Id.* at 1296.  Nonetheless, this statement was considered "direct evidence" in the Eleventh Circuit. *Id.*  The *Wright* Court cited to several other cases and explained that an examination of the cases shows that the Eleventh Circuit has not really limited the "direct evidence" doctrine to only those situations that would fit the dictionary definition of the term.  *Id.* at 1298.

The Eleventh Circuit in the Wright opinion then went on to discuss a line of "direct evidence" cases that have cited to the dictionary definition or similar language.  *Id.* at 1298-1299.  The Court explained, however, that all of these cases are consistent with the fact that the Eleventh Circuit has and continues to apply the broader definition of "direct evidence" that is the "preponderance definition."  *Id.*  Indeed, all cases in this

category involves statements that were not deemed "direct evidence," not because of a failure to meet the dictionary definition, but rather, since the statements could not establish by a preponderance of the evidence that unlawful discrimination was a motivating factor. *Id.* Finally, the Eleventh Circuit explained in the *Wright* opinion that there is further support for the application of the broader definition, found in the intent of Congress in enacting anti-discrimination laws and the intent of the Supreme Court in creating the *McDonnell Douglas* method of proof. *Id.* at 1300-1303.

The correctness of the Eleventh Circuit's analysis of the "direct evidence" doctrine in *Wright* is now even more obvious, in light of the Supreme Court's landmark opinion in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L.Ed. 2d 84 (2003), which explains that discrimination plaintiffs must prove that the protected characteristic was merely one factor even if several other factors motivated the same decision. For a detailed analysis of how the Supreme Court authority solidifies the correctness of the *Wright* opinion, see *R. Joseph Barton, Determining The Meaning of "Direct Evidence" In Discrimination Cases Within the 11th Circuit- Why Judge Tjoflat Was (Wright),* The Florida Bar Journal, p. 42 (October 2003).

Clearly Held's statements regarding the decision to terminate CARPER shows her anger that he failed to respond to her communications while on medical leave. This is direct evidence that CARPER's failure to perform his duties while having and recovering from heart surgery was a substantial and motivating factor in the termination decision.

It is fundamental and elementary in the law of employment discrimination that direct evidence is sufficient to prove liability, and that a plaintiff relying upon direct evidence need not produce any other evidence in order to survive judgment as a matter of law. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985); *Dybczak v.* Tuskegee *Institute*, 737 F. 2d 1524, 1528 (11th Cir. 1994). Also see the Supreme Court's ruling in *Price Water House v. Hopkins,* 490 U.S. 228, 104 L.Ed. 2d 268, 109 S.Ct. 1775 (1989), in which it was held that *McDonnell Douglas* is "inapplicable" if a plaintiff produces direct evidence.

Defendant cannot rely on the proposition that plaintiff must prove pretext with

regard to each and every single reason that Defendant gives for its decision. That is no longer good law, in light of the Supreme Court decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). The Supreme Court explained that a plaintiff need merely prove that the protected characteristic was one of the motivating factors, even if there were several other permissible factors that also motivated the same decision. *Id.* The Supreme Court further explained that this "mixed motive" standard applies to discrimination cases and is no longer limited to "direct evidence" cases, since the unambiguous language of this statute is not so limited. *Id.*

Therefore, in the instant case, even if the discriminatory comments or other evidence is deemed to be merely "circumstantial evidence", it is an incorrect proposition of law to suggest that plaintiff must disprove each and every articulated reason that Defendant gives. Again, a plaintiff can prove liability even if there were several legitimate nondiscriminatory reasons that motivated the same decision.

Frankly, plaintiffs never were supposed to be bound by the *McDonnell Douglas* standard in the first place. It is elementary that *McDonnell Douglas* was plaintiff's victory, and that the Supreme Court created one possible method of proving discrimination. It was never intended to be the exclusive method of proof available to plaintiffs. *Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 735 (5th Cir. 1977) ("*McDonnell Douglas* did not establish an immutable definition of a prima facie case"); *McCorstin V. United States Steel Corp.,* 621 F.2d 749, 753-54 (5th Cir. 1980) (the elements of *McDonnell Douglas* do not constitute "the alpha and omega" of a prima facie case); *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1453, 1442 (11th Cir. 1985) (the elements of *McDonnell Douglas* do not constitute the "alpha and omega" of methods to prove discrimination and "this Court has repeatedly cautioned against an overly strict application of the *McDonnell Douglas/Price Test*").

In any event, since this case involves *direct* evidence, it is fundamental that plaintiff need not rely on circumstantial evidence and need not disprove *any* of the reasons asserted by defendant in its Motion. Indeed, this has always been the law, even before *Costa*.

<u>Pretext</u>

In the alternative, if the Court does not find direct evidence of discrimination, Plaintiff has shown that he is disabled, was qualified and was terminated because of his disability. To establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate "that (1) he has a disability, (2) he is a `qualified individual,' which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability." *Reed v. The Heil Co.,* 206 F.3d 1055, 1061 (11th Cir.2000).

Plaintiff can show the articulated reason, that Plaintiff was terminated for poor performance and insubordination is pretextual. In order to create a genuine issue of material fact on the question of pretext, Plaintiff must demonstrate that Defendant's proffered legitimate business reason was not the real reason for the employment decision. *Jackson v. State of Alabama State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir.2005). In other words, a plaintiff must "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997). Plaintiff may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* In the latter approach, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir.2004), *overruled on other grounds.*

Defendant has stated that Plaintiff was insubordinate for not making efforts to keep Longobardi as a technician and for alleged comments made on December 8, 2008 after Held made the termination decision. These articulations are easily disproved based on Held's testimony and emails. Held has admitted that Longobardi blamed her for his

15

leaving when he was denied the promotion the Plaintiff was hired for, that he was not supported by Held and received his own contractor license to open his own company in competition with Defendant. (Ex. K.  Held Depo at page 40, line 21 to page 41, line 2; page 44, line 18 to page 45, line 8; page 156, line 20 to page 157, line 19); (Ex. G. Anderson Depo at page 31, lines 5-17); (Ex. I. Carper Depo at page 57, line 13 to page 58, line 8).

Held's email of December 8, 2008 does not mention anything about Plaintiff being insubordinate or making the statements she first manufactured at her deposition. The "flood of emails" Defendant argues shows poor performance are with only one exception emails requesting Plaintiff take action. There is no evidence that Plaintiff was ever disciplined and only one email on October 13, 2008 stating Plaintiff had to improve his performance after an excellent performance evaluation and raise in May 2008. (Ex. D). That action plan was substantially about Longobardi, which Plaintiff has already shown was Held's fault.

Curiously, Defendant has abandoned its prior argument that Plaintiff was not qualified for the position. That shifting of position and manufacturing arguments not in Defendant's EEOC position statement or interrogatory response #3 should be enough to show Plaintiff's articulation is pretextual. Typically, a plaintiff who establishes a *prima facie* case and has set forth sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, creates a jury issue and, hence, a plaintiff will prevail over a defendant's motion for summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 140, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1532 (11th Cir.1997)).

<u>Genuine Issues of Material Fact</u>

TWC's counsel filed the motion for summary judgment knowing that TWC's President testified that there were genuine issues of material fact as to whether CARPER was disabled, had a medical record of disability or that Held based her decision to terminate based on CARPER's performance while he was on approved medical leave for heart surgery.  Based on TWC President Paul Morrison's testimony the motion for

16

summary judgment should not have been filed by TWC's attorneys. (See Plaintiff's Opposition to Defendant's Undisputed Statement of Fact, #18, 24). The attorneys are arguing there is no genuine issue of material fact as to CARPER's disability and record of disability, while the TWC President, who testified that he speaks for the company, stated it was a disputed issue of material fact. Based on the testimony of the TWC President, filing the motion for summary judgment when there are admittedly genuine issues of material fact is sanctionable.

<u>Rules on Presentation of Undisputed Facts</u>

Many defendants believe that Rule 56 requires that they identify only those portions of the record that support their position on summary judgment, even when there exists evidence to the contrary of which the defendants are aware. Such defendants maintain that the burden of producing such contrary evidence is on the nonmoving party, usually the plaintiff. This appears to be the assumption of the present motion. But that is not the law, as has been succinctly shown by the court that has addressed this most directly, after noting that the purpose of summary judgment is to isolate and dispose of factually unsupported claims:

> When a party has obtained knowledge through the course of discovery, or otherwise, that a material factual dispute exists and yet proceeds to file a summary judgment motion, in hopes that the opposing party will fail or be unable to meet its burden in responding to the motion, he defeats that purpose; and, more importantly, violates the rules of procedure which govern the conduct of trial, specifically Rule 11.

*Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988). There is thus no summary judgment exception to Rule 11, despite the apparent belief to the contrary by many defendants. The Supreme Court of Florida has also had occasion to address this practice. The court found that it is impermissible to claim a fact to be undisputed for summary judgment purposes when the moving party knows of the existence of a dispute. Further, it is no excuse that the moving party believes the evidence supporting the non-moving party to lack credibility or even to be fraudulent. *The Florida Bar v. Corbin*, 701 So. 2d 334 (Fla. 1997). The moving party may not conceal a factual issue and hope that the opposing

party will fail to address it. Thus the claim that it is undisputed that Plaintiff 's performance appraisal was "passable", that there were "hundreds of emails of dissatisfaction", that Plaintiff was "admonished for poor customer service", that Held did know Plaintiff needed heart surgery until October 2008, that Plaintiff never requested an accommodation when Defendant admits at SOF #27 that Held accommodated him, and that Plaintiff can climb a ladder to the roof (SOF # 30) when McCord testified he had not done so in two years, is evidence of Defendant's attorney bad faith in filing this motion.

As Plaintiff's response to the fact statement shows, there is a document or a deposition passage that creates a material factual issue on very nearly every claim Defendant advances as an undisputed fact. These claims were all known, or should have been known, to be disputed or false before the motion was filed. Defendant obviously relies on the presumed "summary judgment exception to Rule 11" discussed above.

The defense counsel is well aware of the genuine issues of disputed fact in this case and should not have filed this motion. In employment cases too many practitioners see it as a wholly forgivable fib or a "little white lie" to call a factual allegation undisputed even when that very attorney took depositions in which other witnesses said the opposite and where at least some of the documents show the opposite. The rules and the scheduling order may say "undisputed material facts" but they are thought not to really mean it. This practice and this assumption are growing at an alarming rate. The present case presents a particularly egregious example. Apart from the basic duty of candor to a tribunal, there is a practical detriment. What would properly be a half page of undisputed facts becomes a 10-page monstrosity requiring a 12 page response. One recognizes Defendant's SOF immediately as mostly false or disputed by its own witnesses and documents. But in a case where the depositions are long and the documents voluminous, one must labor for many long days to ferret out all the evidence that shows the dispute or the immateriality or the outright falsehood.

It is especially onerous in that, under our rules, everything not expressly rebutted is taken as established. So one may not risk counting on the Court to see that something is just wrong or improper. Every detail must be addressed. And it is all for naught because

the offending fact statement should never have been written if the author had respect for the rules of law and professional responsibility enforced by the court in Goka and Corbin. This must be an unnecessary burden on court personnel as well to sift through such a volume of material.

The courts should take responsibility for addressing and correcting this *sua sponte*. A plaintiff's motion will be met with a counter motion and much digression and satellite litigation that merely plays into a defendant's hands by diverting attention from the case in chief. The false fact statements are an invidious, if widespread practice. We are all the worse for it

CONCLUSION

In conclusion, Plaintiff has substantial evidence that he is protected by the ADA and the FCRA. He is permanently disabled as a result of his long term heart condition. He is substantially restricted from walking, breathing, climbing ladders, walking up steps, driving and suffers from dizziness, blackouts and has a medical record that includes hypertension, dyslipidemia, heart palpitations, atrial flutter, atrial fibrillation, ablation, heart surgery and has a pacemaker since 2009. The emails of Branch Manager Debbie Held are direct evidence that she terminated him, after previously accommodating his disability, based on his performance while on medical leave having and recuperating from heart surgery.

Defendant's counsel has ignored the genuine issues of material fact recognized by Defendant's President and Regional Manager and filed this motion that is not supported in fact or law. Defendant recognizes that Plaintiff was previously accommodated but argues he never requested accommodation. The arguments that Plaintiff was terminated for insubordination or performance issues are rebutted by the documentary evidence and testimony of all the truthful witnesses, relying on the easily impeachable testimony of Debbie Held, who is known to Defendant as a liar and a thief. This Court will have to determine whether Defendant's motion is sanctionable and must deny the motion based on the evidence and recognized genuine issues of material fact.

Respectfully submitted

__*s/R.Fleischer*__
Randy A. Fleischer, Esq.
Florida Bar # 910546
randy@rafesq.com
8258 State Road 84
Davie FL 33324
(954) 472-8401
Fax (954) 472-8446
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, August 15, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing, generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_s/R.Fleischer_____
Randy A. Fleischer, Esq.
Florida Bar Number 910546
randy@rafesq.com
Law Offices of Randy A. Fleischer, P.A.
8258 State Rd 84
Davie FL 33324
954) 472-8401
954) 472-8446 (fax)
Attorney for Plaintiff

## SERVICE LIST

**CARP V TWC, INC..**
**Case No. 0:11-cv-60132-WPD**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Christine D. Hanley & Associates, PA
Christin M. Russell, Esq.
Fla. Bar #51485
crussell@cdhanley.com
1000 Southern Blvd. Second Floor
West Palm Beach FL 33405
561) 659-5646
561) 659-1260 (Fax)
Attorneys For Defendant
Service via email